UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MOISES CARRILLO, | ) |
|         Petitioner, | ) ) ) |
|         v. | )   No. 1:20-cv-00313-JRS-DLP ) |
| ZATECKY, | ) ) ) |
|         Respondent. | ) |

**Order Denying Petition for a Writ of Habeas Corpus
and Directing Entry of Final Judgment**

Indiana prison inmate Moises Carrillo petitions for a writ of habeas corpus challenging a prison disciplinary sanction imposed in disciplinary case number ISR 19-04-0096. For the reasons explained in this Order, Mr. Carrillo's habeas petition must be **denied**.

**A.  Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

### B.    The Disciplinary Proceeding

On April 5, 2019, Indiana Department of Correction (IDOC) Correctional Officer K. Brooks wrote a Report of Conduct charging Mr. Carrillo with possession of a cellular device, a violation of the IDOC's Adult Disciplinary Code offense A-121. The Report of Conduct states:

> On the above date and time I, K. Brooks, located a white cellular device with a charging cord sealed within the bottom of a personal cardboard box in the locker belonging to offender Carrillo Moises 208082.

Dkt. 7-1.

Mr. Carrillo was notified of the charge on April 15, 2019, when he received the Screening Report. Dkt. 7-4. He pled not guilty to the charge, did not ask for witnesses, and said that the video surveillance recording would show that the phone was not in his "bed area." *Id.*

A hearing was held on June 25, 2019. Mr. Carrillo requested a translator and said he understood "some English." He added that he had never seen the phone before, someone else could have put it into his property, there were 80 people in the area, the phone was "100% not mine," he could not afford a phone, and he had ten years of clean conduct. Dkt. 7-12.

The disciplinary hearing officer (DHO) viewed the video of the incident, took Mr. Carrillo's statement into account, considered the staff reports and evidence (photographs of the phone and charger), and found Mr. Carrillo guilty of possessing a cellular device. *Id.* The DHO wrote that the phone was "pulled out" from Mr. Carrillo's bed area, and that a preponderance of the evidence supported the charge. The sanctions imposed included a forty-five day earned-credit-time deprivation and a credit earning class demotion. *Id.*

Mr. Carrillo appealed to the Facility Head. He argued that he was denied evidence at the hearing, specifically that Officer Brooks failed to produce the personal property box containing the phone. Mr. Carillo argued that the box would have contained a different inmate's personal

information. Dkt. 7-13. He also argued that the video evidence did not depict exactly where the phone was found, the phone data was never investigated (which would have shown the phone was not his), and witnesses were not provided who would have corroborated his contentions. *Id.* The Warden's response noted that a request for the cell phone data could not be found, and otherwise, there was no error. *Id.* The appeal was denied.

The IDOC does not have a record of Mr. Carrillo taking the Warden's decision on appeal to the Final Reviewing Authority. Mr. Carrillo asserts that he completed the paperwork for the next appeal and placed it in the internal prison mail system.

On January 28, 2020, Mr. Carrillo filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition is ripe for review.

    **C.**    **Analysis**

        **1.**    **Exhaustion of Administrative Remedies**

            **(a)**    **Exhaustion Requirement**

In Indiana, only the issues raised in a timely appeal to the Facility Head and then to the Indiana Department of Correction Appeals Review Officer or Final Reviewing Authority may be raised in a subsequent petition for writ of habeas corpus. *See* 28 U.S.C. § 2254(b)(1)(A); *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002); *Moffat v. Broyles,* 288 F.3d 978, 981 (7th Cir. 2002). When a petitioner has taken both appeals, the grounds for relief he presented are considered "exhausted," in that the petitioner has exhausted his available state remedies. However, a petitioner cannot obtain relief on a procedurally defaulted claim without showing either "cause and prejudice" to excuse the default or "that the court's failure to consider the defaulted claim would result in a fundamental miscarriage of justice." *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013).

The Warden argues that of the three grounds for relief presented in the petition, only one of them was contained in Mr. Carrillo's facility level appeal. Therefore, he argues, the issue of whether an appeal was made to the Final Reviewing Authority is irrelevant to the two issues not contained in the facility level appeal. Mr. Carrillo concedes this assertion and in his reply he argues that his failure to present these two grounds for relief in his facility level appeal "should be excused." *Id.* at 4-5.[1] The omitted grounds for relief concern the DHO's failure to provide a Spanish translator and failure to grant a continuance to find a translator. *See* dkt. 1 at 3 (Ground One) & 3 4 (Ground Two).

A procedural default may be excused if the petitioner "can demonstrate either (a) cause for the default and prejudice (i.e., the errors worked to the petitioner's 'actual and substantial disadvantage,'); or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (i.e., a claim of actual innocence)." *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004) (in turn quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Cause is "'an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding. Prejudice [is] an error which so infected the entire trial that the resulting conviction violates due process.'"

---

[1] The Warden contends that Mr. Carrillo failed to take an appeal to the IDOC Final Reviewing Authority and that, therefore, none of his three grounds for relief are exhausted and capable of federal review. *See* dkts. 7-14 & 7-15. As noted in Section B, Mr. Carrillo contends that he placed his final appeal in the prison "law library outgoing mail for processing" and any failure to send it to the Final Reviewing Authority is not his fault. Dkt. 9 at 1. Mr. Carrillo's contention is not presented in an affidavit, only in his reply to the Warden's return, and the reply is not verified or signed under penalty of perjury. *Id.* & at 11-12. The Court need not resolve this issue because, assuming that Mr. Carrillo pursued the final appeal, it was necessarily limited to the issues that he had presented in the first level (facility level) appeal. Dkt. 7-13.

*Weddington*, 721 F.3d at 465 (quoting *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (quotation and citation omitted)).

### (b)    Cause and Prejudice

Mr. Carrillo argues that cause and prejudice are shown by the fact the he speaks very little English, which hindered his communication with his lay advocate. Dkt. 9 at 6. But he does not explain how a language barrier caused the translator issues to not be raised in the facility level appeal. On the face of the disciplinary report the phrases "Translator requested" and "I do understand some English" are written in the offender's comment section. Dkt. 7-12. Anyone assisting Mr. Carrillo with his appeals would have noted these comments and been on notice of the potential appellate issue. The offender comment section also contains Mr. Carrillo's defense to the charge, and he argues no other defenses that he would have raised. The Court discerns no external cause for the failure to present the lack of a translator issue in Mr. Carrillo's facility level appeal.[2]

"To demonstrate a fundamental miscarriage of justice, a petitioner must show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent' such that 'it is more likely than not that no reasonable [fact finder] would have convicted [the petitioner] in the light of the new evidence.'" *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). The fundamental miscarriage of justice exception is a "rare" circumstance, to be applied only in the "extraordinary case," which the Supreme Court has "explicitly tied . . . to the petitioner's innocence." *Schlup v. Delo*, 513 U.S. 298,

---

[2] The disciplinary case record contains six notices of postponement of the hearing, three at the request of Mr. Carrillo. *See* dkts. 7-5, 7-6, & 7-11. After the second postponement request is a "notice to lay advocate" form indicating that offender Bucio would act as a translator with the agreement of Mr. Carrillo. Dkt. 7-7. No explanation of this event is discussed by the parties, and there is no assertion of whether offender Bucio provided translation services.

321 (1995) (citing *Kuhlmann v. Wilson*, 477 U.S. 436 (1986); *Murray v. Carrier*, 477 U.S. 478 (1986). The Court has stressed that a strong case of innocence must be shown before the Court can consider excusing the procedural bar.

Mr. Carrillo does not present a strong case of actual innocence. It has not disputed that a cell phone and charger were found in his bed area. Dkt. 7-1. One of his defenses was that someone else could have put it there. Dkt. 7-12. These assertions raise questions of constructive possession, but they do not raise a strong showing of actual innocence. There is no fundamental miscarriage of justice present in the disciplinary conviction.

Ground One and Ground Two of Mr. Carrillo's petition have been procedurally defaulted and cannot be the basis for habeas corpus relief. These grounds are **denied**.

### 2. Ground Three – Denial of Evidence

The Warden argues that because Mr. Carrillo's third ground for relief was not appealed to the IDOC Final Reviewing Authority, it, too, is procedurally defaulted. It was contained in the facility level appeal, however, and Mr. Carrillo contends he placed a final appeal into the prison mail system. Dkt. 7-13 & 9. Rather than resolve that issue, the Court finds that it will be in the interests of both justice and judicial efficiency to review the merits of Mr. Carrillo's third ground for relief. In *Lambrix v. Singletary*, 520 U.S. 518, 524 (1997), "the Supreme Court noted that its cases have 'suggest[ed] that the procedural-bar issue should ordinarily be considered first.' Nevertheless, added the Court, it did 'not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.'" *Brown v. Watters*, 599 F.3d 602, 609–10 (7th Cir. 2010) (quoting *Lambrix*, 520 U.S. at 525).

In this case, considering Ground Three on the merits rather than first resolving the exhaustion issue will most likely promote judicial economy. The review permitted of prison

6

disciplinary cases is often more narrow than that of procedural default questions. Thus it is a more efficient use of the Court's resources to address the merits.

In his third ground for relief, Mr. Carrillo contends that he was denied exculpatory evidence. Dkt. 1 at 3-4. He claims to have requested (a) data from the cell phone to show what phone numbers were present and could be linked to others in the prison, (b) statements from witnesses to establish that the phone was found in a property box belonging to another inmate, and (c) the property box to show that it contained the property of another inmate. *Id.* at 4.

Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). In the prison disciplinary context, "the purpose of [this] rule is to insure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Id.* (citation and quotation marks omitted). Evidence is exculpatory if it undermines or contradicts the finding of guilty, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008). When prison administrators believe a valid justification exists to withhold evidence, "'due process requires that the district court conduct an *in camera* review' to assess whether the undisclosed [evidence] is exculpatory." *Johnson v. Brown*, 681 F. App'x 494, 497 (7th Cir. 2017) (quoting *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003).

When Mr. Carrillo appealed his conviction to the facility Warden, he complained that the phone data was not provided. Dkt. 7-13. The Warden responded that, first, there is no record that Mr. Carrillo ever requested the phone data, and second that the prison did not have the capabilities to obtain that information. *Id.* & dkt. 7 at 10. In reply, Mr. Carrillo argues only why the phone data

would have been important, an argument which may have some merit, but he does not argue or present evidence to show that the phone data actually existed and could have been produced. Prison authorities are not required to create evidence they do not have. *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017) (prison officials not required to create or produce evidence they do not have).

When Mr. Carrillo was screened for the disciplinary charge, he did not request any witnesses. Dkt. 7-4. He claimed in the facility level appeal that he later requested witnesses, but in response the Warden did not address that part of his appeal. Dkt. 7-13. The Warden notes in this action that Mr. Carrillo did not state either in his facility level appeal or in the habeas corpus petition the names or other identifiers of those from whom he wanted statements. Dkt. 7 at 10. These arguments are not addressed in Mr. Carrillo's reply. The Court finds the record supports the Warden's argument. The Court also notes that it cannot find in the disciplinary case record any request for witnesses.

Mr. Carrillo requested the property box be produced at the hearing to show that it was not his box. He argues that it was exculpatory that the contents of the box were not his. While this contention may also have some merit, it is not dispositive of the question.[3] The decisive factor on the ground for relief is that the hearing officer noted that the box could not be found, not that the request for it was denied. There is no suggestion in the record that the property box was known to be exculpatory evidence and therefore destroyed or hidden. Thus Mr. Carrillo has not shown that the prison officials *withheld* exculpatory evidence from him. In any event, any error related to the

---

[3] If the property box was shown to belong to another inmate, Mr. Carrillo could still have been found to possess it under the doctrine of constructive possession. *See Hamilton v. O'Leary,* 976 F.2d 341, 345 (7th Cir. 1992) (holding that evidence showing a twenty-five percent chance of guilt constitutes "some evidence" under the circumstances).

8

non-production of the property box is harmless in light of other evidence relied upon by the hearing officer. *See Piggie*, 344 F.3d at 678 (applying harmless error doctrine to prison disciplinary cases).

In his reply, Mr. Carrillo adds a video recording to his list of denied evidence. This video evidence issue is not contained in the petition for a writ of habeas corpus. Dkt. 1. at 4. It is contained in Mr. Carrillo's facility level appeal, but Mr. Carrillo states there that "[t]he video didn't depict exactly where or what locker [the property box and phone] was found." Dkt. 7-13. How the video is exculpatory is not explained in the facility level appeal. *Id.* The argument in his reply makes completely contrary assertions, *see d*kt. 9 at 8, but the Court need not address the questions of the video evidence because new arguments may not be raised for the first time in a reply. *Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014).

For these reasons, habeas corpus relief pursuant to Ground Three of the petition is **denied.**

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Carrillo to the relief he seeks. Accordingly, Mr. Carrillo's petition for a writ of habeas corpus challenging prison disciplinary case number ISR 19-04-0096 is **denied** and this action is **dismissed** with prejudice. Final judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 10/6/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Moises Carrillo
208082
Pendleton Correctional Facility
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, IN 46064

David A. Arthur
Indiana Attorney General
david.arthur@atg.in.gov